**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

JOHN OWEN LEE,

        Plaintiff,

vs.

SETH T. SMALL, Individually, and
GREGORY TOFT, Individually and
doing business as TOFT & SONS
FARM,

        Defendants,

SETH T. SMALL,

        Counterclaim Plaintiff,

vs.

JOHN OWEN LEE,

        Counterclaim Defendant.

SETH T. SMALL,

        Third-Party Plaintiff/
        Counterclaim Defendant,

vs.

LLEWELLYN BROWN,

        Third-Party Defendant/
        Counterclaim Plaintiff.

No. C 10-4034-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING MOTIONS IN
LIMINE**

---

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    *A.*    *Preliminary Evidentiary Rulings Or Challenges To Claims And Defenses?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    *B.*   *Relevance And Prejudice Standards* . . . . . . . . . . . . . . . . . 9

    *C.*   *Uncontested Categories* . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        *1.*    *Evidence of settlement offers* . . . . . . . . . . . . . . . . . 12

        *2.*    *Cross-examination by Small's counsel regarding Lee's damages* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    *D.*   *Overlapping Categories* . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        *1.*    *Evidence of liability insurance* . . . . . . . . . . . . . . . . 14

        *2.*    *Evidence of collateral source payments from Medicare* . . . . . 15

            *a.*   *Arguments of the parties* . . . . . . . . . . . . . . . . 16

            *b.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                *i.*   *Billed vs. paid medical expenses* . . . . . . . . . . 18

                *ii.*   *Identity of the payor* . . . . . . . . . . . . . . . . 23

            *c.*   *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    *E.*   *Remaining Portions Of Lee's Motion In Limine* . . . . . . . . . . . . . . . 25

        *1.*    *Evidence of the fault of any medical providers* . . . . . . . . . 25

            *a.*   *Arguments of the parties* . . . . . . . . . . . . . . . . 25

            *b.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

        *2.*    *Evidence of correspondence from Medicare* . . . . . . . . . . . 33

            *a.*   *Arguments of the parties* . . . . . . . . . . . . . . . . 33

            *b.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

        *3.*    *Evidence of Brown's fault in causing Lee's damages* . . . . . . 35

            *a.*   *Arguments of the parties* . . . . . . . . . . . . . . . . 35

            *b.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

        *4.*    *Evidence relating to Lee's sex life* . . . . . . . . . . . . . . 39

            *a.*   *Arguments of the parties* . . . . . . . . . . . . . . . . 39

            *b.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

        *5.*    *Evidence of alcohol consumption and recovery programs* . . . 40

            *a.*   *Arguments of the parties* . . . . . . . . . . . . . . . . 41

            *b.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

    *F.*   *Remaining Portions Of Small And Toft's Motion In Limine* . . . . . . . 43

        *1.*    *Damages evidence not disclosed in discovery* . . . . . . . . . 44

            *a.*   *Arguments of the parties* . . . . . . . . . . . . . . . . 44

            *b.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

2.    *Unidentified experts* . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
      a.    *Arguments of the parties* . . . . . . . . . . . . . . . . . . 45
      b.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
3.    *Evidence regarding dangerousness* . . . . . . . . . . . . . . . . . . 46
      a.    *Arguments of the parties* . . . . . . . . . . . . . . . . . . 46
      b.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
4.    *Evidence of traffic tickets* . . . . . . . . . . . . . . . . . . . . . . . . 50
      a.    *Arguments of the parties* . . . . . . . . . . . . . . . . . . 50
      b.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
G.  *Brown's Motion In Limine* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
1.    *Toft's factual assertions beyond personal knowledge* . . . . . . 56
      a.    *Arguments of the parties* . . . . . . . . . . . . . . . . . . 56
      b.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
2.    *Evidence of Small's status as an EMT and Army Reservist* . . 57
      a.    *Arguments of the parties* . . . . . . . . . . . . . . . . . . 58
      b.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

III.  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Two nighttime collisions in quick succession between a tractor pulling farm equipment across a bridge and oncoming passenger vehicles have brought this diversity action before me on pretrial evidentiary motions. While many of the issues presented are appropriate pretrial challenges to admissibility of evidence, some are dispositive motions dressed up as mere challenges to the admissibility of evidence at trial. Nevertheless, the expeditious resolution of the case requires me to address all of the issues on the footing presented.

## I. INTRODUCTION

### A. Factual Background

The following factual background is gleaned from the pleadings and the parties' statements of facts in their evidentiary motions.[1] Late in the evening on November 13, 2009, hours after sunset, Seth T. Small, a farm hand employed by Toft & Sons Farm, was driving a large farm tractor pulling an even wider implement known as a disc ripper or chisel plow westbound on Highway 18, near Spencer in Clay County, Iowa. There appears to be no dispute that Small had the "field lights" on the tractor turned on, but that the implement he was towing was unlit. There also appears to be no dispute that the

---

[1] No summary judgment or other dispositive motions were filed in this case, before or after it was transferred to me on March 4, 2011. Thus, I have no knowledge of the facts beyond the pleadings, the parties' statements in support of their evidentiary motions, and any attachments to their evidentiary motions.

implement extended well across the center line of the highway. The parties dispute whether the "field lights" blinded oncoming drivers.

Small attempted to cross a bridge, approximately 500 feet long, over the Little Sioux River a few miles east of Spencer. Other parties involved in the incident on November 13, 2009, contend that, at that point, less than a car's width remained between the implement that Small was towing and the guardrail of the bridge on the eastbound side of the bridge. When Small was about 100 feet onto the bridge, an eastbound vehicle, driven by Llewellyn Brown, approached and collided with the implement. Brown's vehicle was eventually deflected down the embankment into the north ditch where it struck a tree. Brown alleges that he suffered physical injuries and physical and mental pain and incurred medical expenses and damages to person and property as a result of this first collision.

Small stopped the tractor, either just before or as a result of the first collision. Just after Small, who was an emergency medical technician (EMT), climbed down from the cab of the tractor, intending to render aid to the driver of the vehicle involved in the first collision, a second eastbound vehicle, driven by John Owen Lee, collided with the tractor and implement and also struck Small. Small and Lee each allege that they suffered physical injuries, mental and physical pain and suffering, loss of function of mind and body, and other damages as a result of this second collision.

Somewhat more specifically—because his history of medical treatment is relevant to some of the motions in limine—Lee suffered a fractured left scapula, broken ribs, a lung contusion, and various abrasions. He was taken by ambulance to Spencer Hospital, but was soon transferred to Sanford Health Center in Sioux Falls, South Dakota. On November 18, 2009, while still at Sanford Health Center, Lee was diagnosed with a staphylococcus infection that eventually caused respiratory and renal failure and required a tracheostomy and mechanical ventilation over the next six weeks. Lee was eventually

5

transferred from Sanford Health Center to Bethesda Hospital in Minneapolis, Minnesota, on January 11, 2010, then to Bayshore Health Center in Duluth, Minnesota, on January 22, 2010. On March 15, 2010, he was transferred again to an assisted living facility in Duluth, where he resided until his release on December 1, 2010. He alleges that he incurred expenses for hospitalizations and medical care as a result of the November 13, 2009, in excess of $600,000. Lee had private group health insurance in effect at the time of the collision and, effective December 1, 2009, he became eligible for and received Medicare coverage. Thus, his medical expenses have been paid, at least in part, by his private insurance and Medicare. The parties dispute the extent to which Lee's medical expenses were compromised and reduced by agreements between his providers and his insurer and Medicare and the precise amount ultimately paid for his care.

### B. Procedural Background

On April 28, 2010, Lee, the driver of the vehicle involved in the second collision, filed a Complaint (docket no. 2) initiating this action, based on diversity of citizenship, naming as defendants Small and Gregory Toft, individually and doing business as Toft & Sons Farm, as Small's employer and the owner of the tractor and implement that Small was towing. Lee asserts that the defendants were negligent in various respects and that their negligence caused his injuries. On May 20, 2010, the defendants filed a joint Answer (docket no. 4), denying Lee's negligence claim.

On May 27, 2010, Small filed a separate Counterclaim And Third-Party Complaint (docket no. 5), alleging, *inter alia*, that "[t]he combined negligence of John Owen Lee and Llewellyn Brown was a proximate cause of the accident and the injuries sustained by Seth T. Small" on November 13, 2009. Counterclaim And Third-Party Complaint, Counterclaim at ¶ 5 and Third-Party Complaint at ¶ 6. Small asserted a counterclaim for

negligence against Lee, the driver of the vehicle involved in the second collision, and a third-party claim for negligence against Brown, the driver of the vehicle involved in the first collision. On June 15, 2010, Lee filed an Answer To Counterclaim (docket no. 10), denying Small's negligence counterclaim against him and asserting various affirmative defenses. On June 21, 2010, Brown filed an Answer (docket no. 13) to Small's Third-Party Complaint also denying Small's third-party negligence claim against him and asserting the same affirmative defenses as Lee.[2]

A jury trial on all of these claims was originally set for September 26, 2011, before Senior United States District Court Judge Donald E. O'Brien. *See* Order (docket no. 16). On March 4, 2011, however, this case was transferred to me, *see* Order (docket no. 23), and on April 8, 2011, a jury trial was rescheduled before me to begin on December 12, 2011. *See* Order docket no. 24.

On June 15, 2011, Brown filed a Counterclaim And Cross-Claim (docket no. 27) asserting a negligence claim against Small and Toft, individually and doing business as Toft & Sons Farm, arising from the accident on November 13, 2009. On June 15, 2011, Small and Toft filed a joint Amended Answer (docket no. 29) to Lee's Complaint, again denying Lee's negligence claim, but adding various affirmative defenses. On June 24, 2011, Small and Toft filed a joint Answer To Counterclaim And Cross-Claim Of Llewellyn Brown (docket no. 30), denying Brown's negligence claims against them and asserting the same affirmative defenses that they had asserted against Lee.

In anticipation of the December 12, 2011, trial date, the parties have now filed various evidentiary motions. Somewhat more specifically, on October 31, 2011, Lee filed

---

[2]Lee and Brown are represented by separate counsel. Lee asserts, and the defendants do not dispute, that Small and Toft are jointly represented on Lee's claim against them, but that Small has separate counsel on his third-party claim against Brown.

his Motion In Limine (docket no. 31), seeking to exclude nine categories of evidence; on November 2, 2011, Small and Toft filed a joint Motion In Limine (docket no. 32), seeking to exclude six categories of evidence; on November 2, 2011, Brown filed his Motion In Limine (docket no. 33), seeking to exclude two categories of evidence; and on November 9, 2011, Lee filed a Supplemental Motion In Limine (docket no. 39), expanding one of the categories of evidence that he seeks to exclude. Unfortunately, there is little overlap among the categories of evidence that these motions seek to exclude, and almost all are contested. Resistances to all of these evidentiary motions have now been duly filed.

My crowded schedule has not permitted the timely scheduling of oral arguments on these motions, nor do I believe that oral supplementation of the written arguments is likely to be helpful to me. Therefore, I will consider these motions on the written submissions.

## II. LEGAL ANALYSIS

### A. Preliminary Evidentiary Rulings Or Challenges To Claims And Defenses?

As a preliminary matter, I note that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. I conclude that, with exceptions noted below, preliminary determination of the admissibility of the evidence put

at issue in the parties' evidentiary motions will likely serve the ends of a fair and expeditious presentation of issues to the jury.

As I also observed at the outset of this opinion, however, some of the issues presented as challenges to the admissibility of certain evidence more properly are, or should have been, presented in the form of motions for summary judgment. This is so, because, while they are ostensibly presented as evidentiary challenges, in actuality, they attempt to "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]," which is the province of summary judgment. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Because of the footing in which these issues have been presented, I am hampered in my attempt to resolve them in a speedy and inexpensive manner. *See, e.g.,* FED. R. CIV. P. 1 (the rules of civil procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"). Specifically, I have been deprived of a more developed factual record, of undisputed and disputed facts, pertinent to the questions presented, and I have been deprived of more extensive briefing of the legal issues. Nevertheless, because those issues are presented now, in the form of motions in limine, I will address them in that form.

## B. Relevance And Prejudice Standards

Most, but by no means all, of the categories of evidence at issue in the parties' motions in limine are challenged on the grounds that the evidence either is not relevant, or if relevant, is more unfairly prejudicial than probative. Where relevance and prejudice are not the primary challenges, they remain the last bulwark against admission of the

evidence.  Therefore, before turning to the challenged categories of evidence, I will summarize the generally applicable standards of relevance and prejudice.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not.  Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403.  As the Eighth Circuit Court of Appeals recently explained, in the criminal context,

> [U]nder Rule 403, the [challenged evidence's] probative value must be *substantially* outweighed by *unfair* prejudice. "Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning.  Whether there was unfair prejudice depends on whether there was an undue tendency to suggest decision on an improper basis." *United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007) (quotations omitted).

*United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) (emphasis in the original); *United States v. Myers*, 503 F.3d at 676, 681 (9th Cir. 2007) ("Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case.  The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" (quoting *Wade*

*v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)). Similarly, in the civil context, the Eighth Circuit Court of Appeals has observed that evidence was not unfairly prejudicial to the defendant within the meaning of Rule 403 simply because it demonstrated an element of the plaintiff's claim. *Garner v. Missouri Dep't of Mental Health*, 439 F.3d 958, 960 (8th Cir. 2006). Instead, the pertinent "prejudice" is the *unfair* prejudice of decision on an improper basis. *Muhlenbruch*, 634 F.3d at 1001.

The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged offense and revealed grisly or violent behavior that made the defendant appear "dangerous"). Unfairly prejudicial evidence has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)). The Eighth Circuit Court of Appeals has also recognized that Rule 403 may properly be used to exclude evidence that could result in a "trial within a trial" of issues that is not justified by their probative value. *See Chism v. CNH America L.L.C.*, 638 F.3d 637, 642 (8th Cir. 2011).

"Generally, the balance of Rule 403 weighing should be struck in favor of admission." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 885 (8th Cir. 2006). However, whether the probative value of challenged evidence is substantially outweighed by unfair prejudice "is a fact-intensive question," which must often be answered by the

trial court in the course of trial. *Bennett v. Nucor Corp.*, 656 F.3d 802, 813 (8th Cir. 2011). "'[U]nder Rule 403, great deference is given to a district court's balancing of the relative value of a piece of evidence and its prejudicial effect.'" *Chism*, 638 F.3d at 641 (quoting *United States v. Zierke*, 618 F.3d 755, 759 (8th Cir. 2010), in turn quoting *United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007)). "A district court has broad discretion whether to admit evidence, and [the appellate court] will not reverse 'absent a clear and prejudicial abuse of that discretion.'" *SEC v. Shanahan*, 646 F.3d 536, 548 (8th Cir. 2011) (quoting *Hoselton v. Metz Baking Co.*, 48 F.3d 1056, 1059 (8th Cir. 1995)).

### C. *Uncontested Categories*

Notwithstanding that there is little agreement on the admissibility of most of the challenged categories of evidence, two are uncontested. I will briefly dispose of those categories.

#### 1. *Evidence of settlement offers*

The fifth category of evidence that Lee seeks to exclude, pursuant to Rule 408 of the Federal Rules of Evidence, is evidence of any settlements of, or any offers to settle or compromise, any of the claims made by any of the parties in this suit. Neither Brown, Small, nor Toft resists exclusion of this category of evidence. Rule 408 plainly precludes such evidence "when offered to prove liability for, or invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction," although such evidence may be offered for other purposes.

FED. R. EVID. 408.[3]  No party cites any permissible purpose for which such evidence might be offered in this case.  Therefore, this category of evidence will be excluded.

### 2.  *Cross-examination by Small's counsel regarding Lee's damages*

The ninth category of evidence or argument that Lee seeks to exclude in his Motion In Limine is cross-examination or argument by Small's counsel on Small's third-party claim against Brown on any matters concerning Lee's damages.  Lee represents, and the defendants do not dispute, that Small and Toft are jointly represented on Lee's claim against them, but that Small has separate counsel on his third-party claim against Brown.  Lee asserts that Small's separate counsel has no right to cross-examine witnesses or make arguments before the jury concerning the cause and/or extent of Lee's damages.  To allow otherwise, Lee contends, would effectively give Small multiple representation on the same issues and permit duplicative and repetitive examination and argument that would unfairly prejudice him.  No party has resisted this part of Lee's Motion In Limine.  Therefore, Small's separate counsel, for his third-party claim against Brown, will be precluded from cross-examining Lee or making any argument concerning Lee's damages.

### D.  *Overlapping Categories*

There are also two overlapping categories of evidence that the parties seek to exclude.  All parties seek to exclude evidence of their having or lacking liability insurance at the time of the accident or join in others' motions to that effect.  Also, Lee seeks to exclude evidence of collateral source payments from Medicare, while Small and Toft seek

---

[3]Rule 408 of the Federal Rules of Evidence will be amended effective December 1, 2011, but those amendments are "intended to be stylistic only," and not "to change any result in any ruling on evidence admissibility."  FED. R. EVID. 411 (Proposed Amendment) & Advisory Committee Notes, 2011 Amendments.

to limit Lee's recovery to the amount of medical bills actually paid (including payments by Medicare) or the net amount due and owing. I will consider these overlapping categories of evidence in turn.

### 1. *Evidence of liability insurance*

The one overlapping category of evidence that Lee, Small, and Toft all seek to exclude is evidence of their having or lacking liability insurance at the time of the accident. Specifically, the sixth category of evidence that Lee seeks to exclude is any evidence of his lack of automobile insurance at the time of the collision. He contends that such evidence has no probative value and is inadmissible pursuant to Rule 411 of the Federal Rules of Evidence. Small and Toft do not contest exclusion of this category of evidence in their Resistance (docket no. 36). Indeed, the first category of evidence that Small and Toft seek to exclude, also pursuant to Rule 411, is evidence concerning their having or lacking liability insurance. In Brown's Response (docket no. 35) to the motion by Small and Toft, Brown joins in their request for exclusion of evidence of liability insurance or the name of the carrier. Lee also does not resist this part of the motion by Small and Toft in his Resistance (docket no. 40) to their motion.

Rule 411 currently provides as follows:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

FED. R. EVID. 411.[4]  The parties agree that evidence of the existence or lack of insurance coverage is generally inadmissible, and no party has asserted an excepted purpose for admitting that evidence.  Thus, the pertinent parts of the parties' motions in limine seeking to exclude evidence of the existence or lack of liability insurance will be granted.

## 2. *Evidence of collateral source payments from Medicare*

The third category of evidence that Lee seeks to exclude is evidence and discussion of his eligibility for Medicare benefits, the fact that Medicare has made payments for the medical care that he has received to date, or the fact that Medicare may make payments for care that he may require in the future.  In particular, in the absence of a stipulation, he contends that Small and Toft must be prohibited from discussing or presenting evidence that a collateral source (Medicare) has paid any lesser sums or portions of the medical expenses that he has incurred as a result of the collision on November 13, 2009.  While Brown does not resist this portion of Lee's Motion In Limine, Small and Toft do.  Moreover, as the sixth issue in their Motion In Limine, Small and Toft ask me to rule that Lee is limited to recovering the amount of medical bills actually paid or the net amount due and owing, not a windfall of billed expenses that are not due and owing.  I find that these issues would have been better addressed on a motion for summary judgment, for the

---

[4]Effective December 1, 2011, Rule 411 will be amended to read as follows:
> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully.  But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

FED. R. EVID. 411 (Proposed Amendment).  The changes are "intended to be stylistic only," and not "to change any result in any ruling on evidence admissibility."  *Id.*, Advisory Committee Notes, 2011 Amendments.

reasons stated above, in Section II.A. Nevertheless, because these issues are presented now, in the form of a motion in limine, I will address them in that form.

### a. *Arguments of the parties*

Lee argues that the evidence in question in this part of his Motion In Limine is precluded by IOWA CODE § 668.14(1), because that statute may permit evidence concerning payments made by his group health insurance plan, but it unequivocally prohibits evidence and argument concerning payments made by a state or federal program, such as Medicare. Although he admits that Iowa courts have allowed evidence of actual payments to medical providers, which may be probative as to the fairness and reasonableness of the medical expenses, Iowa courts have also rejected jury instructions that limited the recovery to the amount that a similar state or federal program actually paid. Lee agrees that evidence of collateral source payments may be admitted for the limited purpose of permitting the parties to argue the fairness and reasonableness of medical charges, and he even admits that payments accepted by medical providers in lesser amounts than billed charges may be evidence of what is fair and reasonable, but he argues that the payor may not be identified. He also argues that, pursuant to IOWA CODE § 668.14, he may also provide evidence that the unreduced charges are fair and reasonable and that the jury may award the higher amount. In short, Lee asserts that, if Small and Toft do not stipulate to (1) the actual amounts of his medical expenses paid by the collateral sources and (2) the fact that these amounts paid by the collateral source must be reimbursed from Lee's recovery, pursuant to 42 U.S.C. § 1395y(b)(2)(A)(ii), then Small and Toft must be prohibited from discussing or presenting evidence that a collateral source has paid any lesser sums or portions of the medical expenses that he has incurred as a result of the collision on November 13, 2009.

In resistance to this portion of Lee's motion, Small and Toft argue that evidence of the payments, adjustments, and write-offs by a state or federal program, such as Medicare,

may be introduced to establish the actual expense of the medical services provided to an injured plaintiff and that, IOWA CODE § 668.14 notwithstanding, the collateral source rule is not implicated by such evidence. They argue that such evidence is relevant, because a plaintiff is only entitled to recover the reasonable and necessary costs of medical care, and the reasonable value of those services may be proved by evidence of the amount actually paid for those services. They contend that they seek to introduce evidence of Medicare payments for the limited purpose of showing fairness and reasonableness of the medical charges. They also argue that nothing in Iowa case law suggests that, when evidence of Medicare payments is offered for this purpose, the identity of the payor must be hidden.

In their own Motion In Limine, they assert that Lee is only entitled to recover the amount of medical bills that was actually paid by any insurance provider or Medicare, and/or the net amount that remains due and owing, because only those amounts are recoverable as damages actually sustained as a result of his tort injuries. Any larger sum, they argue, is a windfall. Thus, they seek to exclude recovery of any amounts written off by the healthcare provider to obtain payments from Medicare or an insurance provider. They argue that Lee has not actually incurred any costs that care providers have written off and that the collateral source rule is inapplicable to such writeoffs. They argue that Lee is not entitled to recover additional funds nor is he entitled to introduce into evidence any initial charges that are greater than the amount insurers or Medicare actually agreed to and paid.

In his resistance to the motion by Small and Toft, Lee argues that he incurred roughly $700,000 in medical bills as a result of injuries that he sustained in the collision on November 13, 2009, but that his private insurance and Medicare have settled with his care providers for approximately $300,000. He disputes the position taken by Small and Toft that he is only entitled to recover the compromised amount that his insurance and

17

Medicare paid. He argues that the Iowa Supreme Court has rejected the contention that an injured party's recovery for past medical services should be limited to the amount actually paid for medical services. Instead, he argues that the Iowa Supreme Court recognizes the principle that damages are measured by the reasonable value of medical services and that the amount paid is but one form of evidence on that issue. He also argues that the Iowa Supreme Court has recognized the possibility that medical charges may be compromised for reasons other than the unreasonableness of the billed amounts.

### b. Analysis

I find that it is appropriate to consider separately the questions of whether Lee's damages for medical expenses are limited to the amount paid by his private insurance and Medicare, rather than the amount that he was billed for medical expenses, and whether Medicare may be identified as one of the payors.

*i. Billed vs. paid medical expenses.* As the parties acknowledge, in *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150 (Iowa 2004), the Iowa Supreme Court considered whether the trial court "erred in limiting [a tort] plaintiff's recover to the amount paid for medical services rendered to him and in instructing the jury accordingly." *Pexa*, 686 N.W.2d at 155. The court noted, first, that "[w]hether a plaintiff may recover more than the amount actually paid for medical care is a legal question." *Id.* As a question of substantive law, it is plainly governed by Iowa law in this diversity action, although federal procedural rules otherwise apply. *See, e.g., In re Baycol Prods. Litig.*, 616 F.3d 778, 785 (8th Cir. 2010) ("'It is, of course, well-settled that in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state.'" (quoting *Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252, 1255 (8th Cir. 1996), in turn citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938))).

On this substantive legal question, in *Pexa*, the Iowa Supreme Court explained the scope of the "collateral source rule," as follows:

> The collateral source rule is a common law rule of evidence that bars evidence of compensation received by an injured party from a collateral source. *Schonberger v. Roberts*, 456 N.W.2d 201, 202 (Iowa 1990). The rule prevents the jury from reducing the tortfeasor's obligation to make full restitution for the injuries caused by the tortfeasor's negligence. *Id.* Although this rule has been modified by statute, *see* Iowa Code § 668.14 (1999), it continues to preclude evidence of payments made pursuant to any federal program for an injured person's actual economic losses, *see id.* § 668.14(1).

*Pexa*, 686 N.W.2d at 156. IOWA CODE § 668.14 provides, in pertinent part, as follows:

> 1.     In an action brought pursuant to this chapter seeking damages for personal injury, the court shall permit evidence and argument as to the previous payment or future right of payment of actual economic losses incurred or to be incurred as a result of the personal injury for necessary medical care, rehabilitation services, and custodial care *except to the extent that the previous payment or future right of payment is pursuant to a state or federal program* or from assets of the claimant or the members of the claimant's immediate family.

IOWA CODE § 668.14(1) (emphasis added). In *Pexa*, the court concluded that the collateral source rule was not implicated, "because the court did not reduce the plaintiff's recovery by the amounts paid by a collateral source; rather, the court limited the plaintiff's recovery to those amounts," *see Pexa*, 686 N.W.2d at 156, just as Small and Toft seek to limit Lee's recovery to the amount paid by Medicare and his private insurance. Thus, the collateral source rule does not answer the question of whether or not Lee's recovery is limited to the amounts paid by Medicare and his insurance.

The court in *Pexa* went on to explain,

> A proper calculation of the plaintiff's medical expenses must
> precede a determination of their recoverability; only the latter
> issue implicates the collateral source rule. Thus, the pertinent
> question here is not whether there has been an inappropriate
> offset to the plaintiff's economic loss, but instead whether the
> court's rulings and instructions improperly limited the evidence
> and incorrectly calculated that loss. To answer this question,
> we must consider the rules governing the measurement and
> proof of an injured person's medical expenses.

*Pexa*, 686 N.W.2d at 156. Turning to those rules, and their application, the court stated,

> An injured plaintiff may recover only the reasonable
> and necessary costs of medical care. *See Stanley v. State*, 197
> N.W.2d 599, 606 (Iowa 1972). Therefore, the plaintiff has
> the burden to prove the reasonable value of the services
> rendered. *See id.*; *Ege v. Born*, 212 Iowa 1138, 1153, 236
> N.W. 75, 82 (1931). The reasonable value of medical services
> can be shown by evidence of the amount paid for such services
> or through the testimony of a qualified expert witness.
> *Stanley*, 197 N.W.2d at 606; *Arnold v. Ft. Dodge, Des Moines
> & S. R.R.*, 186 Iowa 538, 547, 173 N.W. 252, 255 (1919).
> The amount charged, standing alone, is not evidence of the
> reasonable and fair value of the services rendered. *Stanley*,
> 197 N.W.2d at 606-07; *Arnold*, 186 Iowa at 547, 173 N.W. at
> 255. The billed amount is relevant only if that figure was paid
> or an expert witness has testified to the reasonableness of the
> charges. *Arnold*, 186 Iowa at 547, 173 N.W. at 255. We
> have consistently held that evidence of the amount charged will
> not, in the absence of proof of the reasonableness of the billed
> sum, support recovery of medical expenses. *Stanley*, 197
> N.W.2d at 606-07; *Ege*, 212 Iowa at 1151-52, 236 N.W. at
> 82; *Arnold*, 186 Iowa at 547, 173 N.W. at 255. This court has
> also stated that the jury is not bound by the testimony of an
> expert with respect to the reasonable value of medical services,

but "may use and be guided by their own judgment in such matters." *Ege*, 212 Iowa at 1153, 236 N.W. at 82.

With these principles in mind, we conclude the trial court erred in limiting the plaintiff's proof of the reasonable value of his medical expenses to the amount paid to and accepted by the medical providers. Counsel for Auto Owners candidly acknowledged at oral argument that he had agreed to stipulate that a particular witness, if called at trial, would testify that the charges of the hospital and other providers were fair and reasonable. Had such testimony been permitted, the plaintiff would have provided an adequate evidentiary basis for the jury to award the billed charges to compensate Pexa for past medical expenses.

We reject the insurer's contention that an injured party's recovery for past medical services should be limited to the amount actually paid for medical services. This position is contrary to the long-standing principle that such damages are measured by the reasonable value of medical services, and the amount paid is but one form of probative evidence on this issue. In addition, this argument fails to account for the possibility that medical charges may be compromised for reasons other than the unreasonableness of the billed amount.

*Pexa*, 686 N.W.2d at 156-57.

The Iowa Supreme Court's decision in *Pexa* plainly establishes that the parties here are both overplaying their positions. Lee's assertion that, in the absence of a stipulation, Small and Toft must be prohibited from discussing or presenting evidence that a collateral source has paid any lesser sums or portions of the medical expenses that he has incurred as a result of the collision on November 13, 2009, is wrong. The decision in *Pexa* plainly establishes that "[t]he value of medical services can be shown by evidence of the amount paid for such services." *Id.* at 156. Thus, the evidence of amounts paid that Lee seeks to preclude is admissible under *Pexa*, without regard to any stipulation by Small and Toft as to the amount of those payments or the fact that the payors must be reimbursed from

any recovery in this case.[5] At the same time, Small and Toft go too far when they argue that Lee's recovery must be limited to the amount that Medicare and his private insurance paid, rather than the amount that he was billed. The Iowa Supreme Court expressly rejected this contention in *Pexa*. *Id.* at 157 ("We reject the insurer's contention that an injured party's recovery for past medical services should be limited to the amount actually paid for medical services.").

The decision in *Pexa* establishes not only the controlling rule, but the evidentiary framework here: The question of Lee's recovery for medical expenses does not turn, alone, on either the amount that he was billed for medical care or the amount that has been paid by his insurance or Medicare, it turns on "the reasonable and necessary costs of medical care." *Id.* at 156. To determine "the reasonable and necessary costs," the jury may consider the amount paid, while the amount billed is not, in and of itself, probative, *until* "that figure was paid or an expert witness has testified to the reasonableness of the charges." *Id.* In other words, evidence of the amount billed will not be admissible here *until* the figure billed has been shown to be "reasonable" from evidence that it was paid or from expert evidence. Evidence of the amount paid, in turn, may be shown not to be the "reasonable" amount by evidence that it was compromised for reasons other than "unreasonableness." *Id.* at 157.

While I may have some sympathy for the argument by Small and Toft that allowing recovery in excess of the amount paid for medical expenses would result in something of a "windfall" to Lee, the Iowa Supreme Court has expressly sanctioned that result. *Id.* Small and Toft's reliance on decisions from other jurisdictions in support of this contention

_____

[5]Nevertheless, in fairness, I will instruct the jury that amounts paid by other payors for Lee's medical expenses must be reimbursed from any recovery that Lee may obtain in this case.

is of no moment, where Iowa decisions establish the substantive law on this point in this diversity action.  *See In re Baycol Prods. Litig.*, 616 F.3d at 785.

The unpublished decision of the Iowa Court of Appeals in *Wildner v. Wendorff*, 723 N.W.2d 451, 2006 WL 2265453 (Iowa Ct. App. 2006) (table op.), cited by both parties, is not to the contrary on any of these points—nor could it control over Iowa Supreme Court precedent.  Citing *Pexa*, that decision held that evidence of payments, adjustments, and write-offs by Medicaid was introduced to establish the actual expense of the medical services provided to the plaintiffs, and that being the case, the collateral source rule was not implicated.  *Wildner*, 2006 WL 2265453 at *4.  Although the Iowa Court of Appeals held that the plaintiffs were only entitled to recover the reasonable and necessary costs of the medical care and that the reasonable value of those services could be proved by evidence of the amount paid for such services, *see id.*, it did not hold that the plaintiffs' recovery was limited to the amount paid for such services.

In short, if supported by proper evidence of "reasonableness," Lee may recover more than the amount actually paid by his insurance or Medicare, but evidence of the amount actually paid will not be excluded.

*ii.* ***Identity of the payor.***  Because information about payments made by Medicare is admissible, the remaining question is whether or not Medicare should be identified as the payor.  Lee argues that it should not, while Small and Toft argue that nothing in Iowa law precludes identifying Medicare as the payor.

Small and Toft miss the point.  While information that a collateral source, such as Medicare, has paid certain medical expenses is relevant to the determination of Lee's damages for reasonable medical expenses, the identity of the payor has no probative value that I can see, and Small and Toft identify none.  Because the identity of the payor has little or no discernible probative value, relatively little potential for prejudice or confusion

23

would substantially outweigh admission of such identity information. *See* Fed. R. Evid. 403. Identification of the payor as Medicare could invite a decision on an improper basis, in that it could induce jurors to give either too much or too little weight to the inferences of "reasonableness" from payment of the expenses by a government program. *See id.*, Advisory Committee Notes (explaining the meaning of decision on an "improper basis"); *Muhlenbruch*, 634 F.3d at 1001 (Rule 403 is intended to prevent decision on an "improper basis"). Moreover, the statutory reformulation of the common-law collateral source rule in Iowa Code § 668.14, directed specifically at payments from government programs, suggests that the Iowa legislature perceived a particular danger in identification of the payor as a government program. In my view, whatever probative value information about collateral payment of Lee's medical expenses might have is essentially the same if the payor (either Lee's private insurer or Medicare) is identified simply as an "insurer." Therefore, this part of Lee's Motion In Limine will be granted to the extent that the amount of medical expenses actually paid by collateral sources may be identified only as payments by "insurers," with more specific identifying information redacted.

   *c.    Summary*

   The third part of Lee's Motion In Limine, seeking to exclude evidence of collateral source payments from Medicare, will be granted to the extent that the amount of medical expenses actually paid by collateral sources, including Medicare, may be identified only as payments by "insurers," but will otherwise be denied. The sixth part of the Motion In Limine by Small and Toft, asking me to rule that Lee is limited to recovering the amount of medical bills actually paid or the net amount due and owing, will be denied.

### E.  Remaining Portions Of Lee's Motion In Limine

Lee's challenges to the admissibility of five categories of evidence remain unresolved.  Brown either does not resist exclusion of these categories of evidence or joins in Lee's request to exclude them, but Small and Toft do resist exclusion of these categories of evidence.  I will consider these five categories of evidence in turn.

#### 1.  Evidence of the fault of any medical providers

The first category of evidence that Lee seeks to exclude is evidence concerning the fault of any of his medical providers.  Lee anticipates that Small and Toft may attempt to show that his injuries and medical complications as a result of and following the collision on November 13, 2009, were caused or worsened by his medical providers and, consequently, his medical providers' negligence was a superseding cause of most of his injuries, relieving Small and Toft from liability for those injuries.  He argues that Small and Toft should be precluded from doing so.  Small and Toft argue that a jury should determine whether certain elements of damages are recoverable against them.  I find that this issue would have been better addressed on a motion for summary judgment, for the reasons stated above, in Section II.A.  Nevertheless, because the issue is presented now, in the form of a motion in limine, I will address it in that form.

#### a.  Arguments of the parties

Lee argues that the substantive law is clear:  Small and Toft are responsible for his damages, even if his damages were enhanced or multiplied by his "misadventures" with medical care.  He argues that Iowa cases show that, so long as he was not negligent in selecting a physician to treat his injuries, Toft and Small are responsible for the injuries their negligence caused, any aggravation or increase of those injuries by any of his physicians' negligence, and the results of the treatment.  In other words, he argues that medical treatment sought by an injured person is a normal consequence of the original

tortfeasor's conduct, and the original tortfeasor is also liable for any adverse effects of aid or treatment of those injuries, even if the aid or treatment was negligent. He argues that whether or not the physician's negligence is a superseding intervening cause only arises in subsequent litigation involving contribution among tortfeasors. Lee argues that there will be and can be no evidence presented that he was in any way negligent in selecting his medical care, so that Small and Toft are liable under the law for the full extent of his damages, which include all of his damages manifested in the course of his care at Sanford Health Center, including his damages from the staphylococcus infection that he contracted there.

In the alternative, Lee argues that fault cannot be allocated to his medical providers pursuant to Iowa Code §§ 668.2 and 668.3, because they are non-parties. Lee points out that he has not filed a negligence claim against any of his medical providers, nor has he negotiated a settlement with or released any of his medical providers, and he doubts that he even has any claim against them. Lee argues that the risk of prejudice raised by any discussion of the fault of non-parties outweighs any purpose for doing so that Small and Toft may offer.

Small and Toft argue that the issue of whether Lee's injuries resulted from their conduct or from treatment by his medical providers is a jury question. They argue that the evidence will show that a significant amount of the damages that Lee claims relate solely to the treatment of the staphylococcus infection. Thus, they argue that the jury should be able to make a factual determination that the stay in the hospital, where Lee contracted the staphylococcus infection, was an intervening cause which Small and Toft could not reasonably foresee or anticipate. They contend that the Iowa Supreme Court has recognized that the factors quoted in RESTATEMENT (SECOND) OF TORTS § 442 are relevant to the determination of whether an intervening act or force constitutes a superseding cause.

They also argue that a serious staphylococcus infection is not the type of harm that normally follows a car accident a week after being hospitalized. Although they do not contend that a physician or medical provider was a superseding cause of Lee's damages *as a matter of law*, they do argue that the jury should determine that issue *as a matter of fact*.

### b.    *Analysis*[6]

As Lee points out, decades ago, the Iowa Supreme Court observed as follows:

> Numerous decisions hold that where one negligently injures another who exercises reasonable care in selecting a physician to treat the injury, and it is aggravated or increased by the physician's negligence, the original tortfeasor is liable for the results of the treatment. *Phillips v. Werndorff*, 215 Iowa 521, 522, 243 N.W. 525 [(1932)], and citations; *Johnson v. Selindh*, 221 Iowa 378, 382-383, 265 N.W. 622 [(1936)]; Annotations, 8 A.L.R. 506, 39 A.L.R. 1268, 126 A.L.R. 912; 15 Am.Jur., Damages, section 85; 25 C.J.S. Damages § 20, p. 477. To like effect is Restatement, Torts, section 457.
>
> \* \* \*
>
> And the rules just mentioned seem equally applicable to negligent treatment of an injury by nurses or other employees of a hospital in which the injured person is treated. *See Feinstone v. Allison Hospital*, 106 Fla. 302, 143 So. 251; Restatement, Torts, section 457, Comments c and d; 26 Am.Jur., Hospitals and Asylums, section 14; 15 Am.Jur., Damages, section 85, page 496. *See also Lucas v. City of Juneau*, D. C.Alaska, 127 F. Supp. 730, 732.

*Bradshaw v. Iowa Methodist Hosp.*, 251 Iowa 375, 386-87, 101 N.W.2d 167, 173-74 (1960); *see also Hunt v. Ernzen*, 252 N.W.2d 445, 446-47 (Iowa 1977) (citing an even

---

[6]Again, this part of Lee's Motion In Limine raises questions of substantive law that are governed by Iowa law in this diversity action. *See In re Baycol Prods. Litig.*, 616 F.3d at 785.

older source for the rule in Iowa, *Collins v. City of Council Bluffs*, 32 Iowa 324, 329 (1871), and also citing *Paine v. Wyatt*, 217 Iowa 1147, 1149, 251 N.W. 78, 79 (1933)). Indeed, read casually, some Iowa cases seem to suggest that any argument that a physician's malpractice in treating a plaintiff's injuries was a superseding intervening cause is simply barred, if the plaintiff was not negligent in selecting the doctor. *See, e.g., Casey v. Koos*, 323 N.W.2d 193, 197 (Iowa 1982) (stating, "Assuming there was no negligence in selecting the doctor, which is not claimed here, the general rule is that a tort-feasor is responsible for the negligence of an attending physician in treating the injured party," (citing *Hunt*, 252 N.W.2d at 446; *Schnebly v. Baker*, 217 N.W.2d 708, 730 (Iowa 1974); and *Bradshaw*, 251 Iowa at 386, 101 N.W.2d at 173), and rejecting, as "without merit," the defendant's attempt to introduce evidence of the attending physician's malpractice in treating the plaintiff's injuries, on the basis that it was a superseding intervening cause of the plaintiff's condition). Small and Toft fail to address any of this authority.

Nevertheless, their position—that there may be fact questions for the jury to resolve as to whether the negligence of Lee's medical providers, resulting in Lee's staphylococcus infection, was a superseding intervening cause of much of Lee's damages—is not wholly without merit. For example, in *Casey*, the Iowa Supreme Court noted that, in a preceding case, *Schnebly*, "additional facts" had raised a fact question on the issue of whether medical malpractice in the care of the injured party was a superseding intervening cause. *Casey*, 323 N.W.2d at 197 (citing *Schnebly*, 217 N.W.2d at 729). In *Casey*, however, the court ultimately held that, under the circumstances of that case, the trial court had correctly rejected the defendant's offer of proof of a superseding intervening cause based on the attending physician's malpractice. *Id.* That decision does not make clear what "circumstances of the present case" precluded the argument and offer of proof, except that there was no showing of circumstances like those in *Schnebly* "involving the negligent

conduct of the defendant doctor in continuing to rely on hospital reports after he knew or should have known they were erroneous," and that the issue arose only in the context of contribution between two tortfeasors, both of whom were held liable to the injured plaintiff. *Id.* (citing *Schnebly*, 217 N.W.2d at 729).

Similarly, the Iowa Court of Appeals has also observed that "[g]enerally, medical treatment sought by an injured person is considered a normal consequence of the tortfeasor's conduct," and that the "general rule" is, "'if the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent manner.'" *Weems v. Hy-Vee Food Stores, Inc.*, 526 N.W.2d 571, 573 (Iowa Ct. App. 1994) (quoting RESTATEMENT (SECOND) OF TORTS § 457). Thus, the court observed, "[a] defendant will be liable for the adverse results of medical treatment unless the treatment is extraordinary or the harm is outside the risks incident to the medical treatment." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 457, comments d and e).

In *Weems*, the court explained why a fact question was *not* presented, and why the "general rule" of RESTATEMENT (SECOND) OF TORTS § 457 applied, as follows:

> It is immaterial in our analysis that the later injury in this case, spinal meningitis, was a rare side effect of the medical treatment. *The important evidence was the undisputed testimony that an epidural block was an accepted and common treatment for chronic back pain and that spinal meningitis was a known risk of the procedure. These facts establish the lack of superseding cause.*
>
> We readily recognize the general rule that the determination of whether an intervening act constitutes a superseding cause should be made by the fact finder. *Iowa Elec. Light & Power*, 352 N.W.2d at 235. Nevertheless, it is

the exclusive function of the court to declare the existence or nonexistence of the rules governing superseding cause. *Stalter by Stalter v. Iowa Resources, Inc.*, 468 N.W.2d 796, 801 (Iowa 1991); Restatement (Second) of Torts § 453. If the facts are undisputed, the court is duty-bound to apply the rules to determine the existence or extent of a negligent actor's conduct. *Stalter*, 468 N.W.2d at 801; Restatement (Second) of Torts § 453 comment b. Where the facts are in dispute or room exists for a reasonable difference of opinion on whether the intervening act is a superseding cause, the question is for the jury. *Haumersen*, 257 N.W.2d at 15; Restatement (Second) of Torts § 453 comments b and c.

*We conclude the trial court correctly rejected Hy-Vee's requested jury instruction on superseding cause. It was not supported by substantial evidence. The undisputed evidence revealed that medical treatment rendered to Weems was not an extraordinary or unforeseeable act. It was within the scope of the original risk of harm of Hy-Vee's negligence. Hy-Vee exposed Weems to the risk of harm and under the superseding cause analysis, it is immaterial that the precise harm to Weems was rare or even unforeseeable. The instructions by the court properly allowed the jury to consider whether the negligence of Hy-Vee was a proximate cause of the subsequent spinal meningitis, but under the record in this case it was not possible to conclude that the epidural block treatment was a superseding cause.*

*Weems*, 526 N.W.2d at 574 (emphasis added). Thus, *Weems* involved a fully developed record, including undisputed evidence that spinal meningitis was a rare, but known risk of an accepted and common treatment for the plaintiff's injury.

In the present case, the question is presented in a motion in limine, not in a motion for summary judgment or a post-trial motion for relief from a jury verdict, that is, it is not presented after development of any kind of record. Therefore, I do not have a sufficiently developed record to determine that, as a matter of law, a staphylococcus infection is a

known risk of hospitalization or a known risk of accepted and common medical treatments that Lee received (or, indeed, whether the medical treatments that Lee received were accepted and common or extraordinary or unforeseeable). *Cf. Weems*, 526 N.W.2d at 574. Nor has Lee pointed me to any sources from which I could take judicial notice of such facts. Similarly, I have no information, on the present record, from which I could conclude, as a matter of law, that there were or were not "additional circumstances" regarding hospital or physician negligence that might take this case outside the scope of the "general rule" that, if there was no negligence in selecting the doctor, the original tortfeasor is responsible for the negligence of an attending physician in treating the injured party, and make the question of whether medical malpractice was a superseding intervening cause a fact question. *Casey*, 323 N.W.2d at 197. Under these circumstances, the part of Lee's Motion In Limine seeking to exclude evidence (or argument) concerning the fault of any of his medical providers will be denied as premature.[7]

Nevertheless, my suspicion that Small and Toft will not be able to generate a triable issue on their "superseding intervening cause" theory, at least if Lee is correct that they have designated no medical experts with reference to his medical condition, is sufficiently strong that I will not initially instruct on that theory as a basis for limiting their liability.

---

[7]Had this issue been raised in the more appropriate context of a motion for summary judgment, and had I only been presented with the record currently before me, I would deny Lee's motion for summary judgment to preclude a superseding cause defense, because he has failed to meet his "initial responsibility of informing the district court of the basis for [his] motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex*, 477 U.S. at 323), and demonstrating that he is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied.").

*Cf. Weems*, 526 N.W.2d at 574 (affirming denial of a "superseding intervening cause" instruction, because it was not supported by substantial evidence). Nor will I instruct that the negligence of any hospital or medical provider is a basis for attributing such entity or person a percentage of fault under the Comparative Fault Act, even though the Iowa Supreme Court likely would apply comparative fault principles to that question. *See Jahn v. Hyundai Motor Co.*, 773 N.W.2d 550, 559-60 (Iowa 2009).[8] This is so, because no hospital or medical provider is a "party" to this action within the meaning of Iowa Code § 668.2 to whom fault can be attributed under Iowa Code § 668.3. *See* Iowa Code § 668.2 (defining a "party" as "a claimant," "a person named as a defendant," "a person who has been released pursuant to section 668.7," or "a third-party defendant"); Iowa Code § 668.3 (requiring that percentages of fault be attributed to parties). Not only has Lee not sued or released any of his medical providers in this lawsuit, but it is also apparent that Small and Toft have not asserted a third-party complaint against any medical providers on the ground that they are or may be liable to them for all or part of Lee's claim against them. *See* Fed. R. Civ. P. 14(a) (stating, in pertinent part, "A defending party may, as

---

[8]In *Jahn*, the Iowa Supreme Court reiterated, "We have repeatedly held that the tortious conduct of others can be natural and foreseeable in the context of medical negligence which results after a plaintiff is injured." *Jahn*, 773 N.W.2d at 560 (citing *Casey*, 323 N.W.2d at 197; *Smith*, 163 N.W.2d at 410, and opining, "It is hard to see how a different approach should apply to a case involving a product defect in an automobile."). The court held, however, that its rule that "comparative fault concepts of Iowa Code chapter 668 do not apply in enhanced injury cases" should be overruled and that the comparative fault and joint and several liability provisions of the Comparative Fault Act should apply to parties liable for divisible and indivisible injuries. Thus, it appears likely that the comparative fault concepts of the Comparative Fault Act would also apply to the issue of whether or not a physician's or hospital's malpractice or negligence increased a plaintiff's injuries from conduct of an original tortfeasor.

third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.").

Therefore, I will deny the part of Lee's Motion In Limine seeking to preclude evidence that negligence of medical providers was a superseding intervening cause of any of Lee's damages, but I will not *initially* instruct on such a defense, either, nor will I submit to the jury, under any circumstances, any question of the comparative fault of medical providers in causing Lee's damages.

## 2. *Evidence of correspondence from Medicare*

The second category of evidence that Lee seeks to exclude is evidence of correspondence from Medicare, the Medicare Secondary Payer Recovery Contractor (MSPRC), or the Center for Medicare Services (CMS). Brown does not oppose this part of Lee's Motion In Limine, but Small and Toft do. I find that, unlike the preceding issue, this issue is a straightforward one concerning the admissibility of evidence properly addressed on a pretrial evidentiary motion. *See* FED. R. EVID. 104.

### a. *Arguments of the parties*

Lee asserts that it is undisputed that he turned age 65 on December 14, 2009, making him eligible for Medicare effective December 1, 2009, and that Medicare thereafter made payments of significant sums to medical providers who treated him for his injuries and medical complications. Nevertheless, Lee asks me to preclude evidence or discussion concerning correspondence from Medicare (or its contractors or agents, MSPRC and CMS, collectively "Medicare") regarding its evolving estimates of its payment for Lee's medical expenses. Lee argues that Medicare has sent several letters with provisional and incomplete estimates of the medical expenses for which Medicare has paid, including a document dated October 8, 2011, informing Lee that Medicare had identified $6,475.82 in conditional payments associated with his claim, when his itemized

medical bills reflected at the time that Medicare had already paid at least $158,963.57 toward his medical expenses. He contends that correspondence from Medicare is riddled with inconsistencies and errors, so that the estimates it contains are tentative and confusing. He contends that the potential for prejudice from such confusing evidence is increased, because it will bear the imprimatur of the federal government, as well as requiring "needless digressions and explanations of the Byzantine intricacies of the Medicare Secondary Payer Act," and causing an unnecessary "trial within a trial."

Small and Toft contend that such information is not so confusing that its probative value is outweighed by its potential for confusion and prejudice. Indeed, they argue that such correspondence is important to the jurors' understanding of the actual damages claimed by Lee. They also argue that the jury should be allowed to weigh any discrepancies in the correspondence that Lee claims.

### b. Analysis

For the reasons explained more fully above, in Section II.D.2., the amount *paid* by Medicare is relevant to the determination of Lee's recoverable damages. *See, e.g., Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 156 (Iowa 2004). Medicare's interim or tentative *estimates* of what amounts will or have been paid, on the other hand, have little or no probative value that I can perceive to determining Lee's recoverable damages. At the same time that they have little probative value, they do have serious potential for substantial *unfair* prejudice, for example, in misleading and confusing the jurors as to what medical expenses have actually been paid, and attempting to clarify the confusion would rapidly devolve into a "trial within a trial." *See* FED. R. EVID. 403 (permitting exclusion of probative evidence on the basis that it may mislead or confuse the jury); *Chism*, 638 F.3d at 642 (recognized that Rule 403 may properly be used to exclude evidence that could result in a "trial within a trial" that is not justified its probative value). This portion of

Lee's Motion In Limine will be granted, and Small and Toft will be precluded from presenting evidence of correspondence from Medicare, the Medicare Secondary Payer Recovery Contractor (MSPRC), or the Center for Medicare Services (CMS), except to the extent that the evidence shows amounts actually paid by Medicare (not merely what Medicare estimates that it has paid) for Lee's injuries (and only to the extent that the identity of the Medicare entities is redacted).

### 3. *Evidence of Brown's fault in causing Lee's damages*

The fourth category of evidence that Lee seeks to exclude is evidence of Brown's fault in causing his damages. Brown joins in this part of Lee's motion, but Small and Toft resist it. Again, for the reasons stated in Section II.A., this issue might have been more appropriately presented on a motion for summary judgment than on a motion in limine. Nevertheless, I will address it on the footing on which it was presented.

### a. *Arguments of the parties*

Lee argues that his claims are made against Toft, individually, and doing business as Toft & Sons Farm, and Small. Although Lee notes that Small has, in turn, filed a counterclaim against him for his negligence in causing Small's injuries, and that Small has also filed a claim against Brown alleging Brown's negligence in causing Small's injuries, neither Small nor Toft has alleged in their pleadings that Brown's fault, if any, was a cause of Lee's damages. Moreover, neither Lee nor Brown has filed any claim against the other. Under these circumstances, Lee argues that Brown's fault, if any, in causing Lee's damages is not an issue, so the jury must not be instructed to consider Brown's fault in causing Lee's damages. Lee argues that it is well-settled under Iowa law that only those parties whose fault toward the plaintiff is at issue may be considered in determining comparative fault.

Small and Toft respond that Brown's fault must be compared as to Lee's claim, because as a third-party defendant, Brown is a "party" within the meaning of the Iowa Comparative Fault Act. They also argue that Brown's fault in causing Lee's damages is directly at issue in this action, because his fault is at issue either in the original action or in Small's third-party action. They argue that there is clearly a relationship between Lee's injuries and Brown's conduct (although they do not explain what it is) and that their Third-Party Complaint against Brown puts all of the parties' fault at issue.

### b.    Analysis

More than two decades ago, the Iowa Supreme Court addressed the question of when a party's fault must be included in the total aggregate fault, as follows:

> We established in *Reese [v. Werts Corp.*, 379 N.W.2d 1 (Iowa 1985),] that in determining the apportionment of fault among parties and released parties pursuant to section 668.3(2)(b) only parties "whose fault toward the claimant is an issue" should be included in the total aggregate of causal fault. *Reese*, 379 N.W.2d at 6. The fault of parties toward the claimant which has not been placed in issue cannot be considered. *Peterson v. Pittman*, 391 N.W.2d 235, 238 (Iowa 1986). Similarly, fault of parties placed in issue in the pleadings which is ultimately determined to be legally insufficient to support the claim may not be considered in the aggregate fault apportionment. *Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading*, 382 N.W.2d 156, 158-60 (Iowa 1986); *Reese*, 379 N.W.2d at 6.
>
> Within this statutory scheme, this occurs when the claimant bases his or her claim against that defendant on some aspect of fault which falls within the statutory definition and which is legally sufficient to support the claim. With respect to a third-party defendant, this occurs when a defendant bases the third-party claim in whole or in part on some fault of the third-party defendant toward the claimant which would be legally sufficient to render that party liable upon the same

36

> indivisible claim for the same injury. *See Reese*, 379 N.W.2d
> at 6; Iowa Code § 668.5(1).

*Schwennen v. Abell*, 430 N.W.2d 98, 102-03 (Iowa 1988); *accord Kragel v. Wal-Mart Stores, Inc.*, 537 N.W.2d 699, 706-07 (Iowa 1995) (also citing *Reese*, and holding that "third-party defendant for the purposes of [IOWA CODE §§ 668.2 and 668.7] means a third-party defendant whose fault toward the claimant is an issue either in the original action or in the third-party action"); *Dumont v. Keota Farmers Co-op.*, 447 N.W.2d 402, 404-05 (Iowa Ct. App. 1989) (also citing *Reese*, and noting that a person or entity identified, but not joined as a party, is not a "party" within the meaning of IOWA CODE § 668.2, so its fault should not be compared). The decision in *Schwennen*, the *Reese* decision on which *Schwennen* relies, and their progeny make clear that it is not enough simply to bring a person or entity into the litigation as a "third-party defendant" to attribute fault to that party or entity on the original claimant's claim; rather, the fault of that person or entity "toward the claimant" must be put at issue. Moreover, even where the pleader attempts to put the fault of the third party at issue, by claiming that the third party is at fault toward the original claimant, the claim against the third party must have "legal efficacy." *Schwennen*, 430 N.W.2d at 103.

Small and Toft have not identified, and I have not found, any portion of the May 20, 2010, joint Answer (docket no. 4) by Small and Toft to Lee's Complaint or any portion of Small's separate May 27, 2010, Counterclaim And Third-Party Complaint (docket no. 5) alleging that Brown's negligence caused *Lee's* damages, *i.e.*, an allegation that would put Brown's fault *toward Lee* at issue. There are allegations that "[t]he accident which is the subject matter of [Lee's] Complaint and [Small's] Counterclaim involved three separate parties," identified as Lee, Small, and Brown, *see* Counterclaim And Third-Party Complaint, Counterclaim at ¶ 4 and Third-Party Complaint at ¶ 3; that "Brown was

negligent in the operation of his motor vehicle which negligence was a proximate cause of injuries sustained by [Small]," *see* Counterclaim at ¶ 4; *cf.* Third-Party Complaint at ¶ 4 ("The Negligence of [Brown] was a proximate cause of the accident and the injuries sustained by Seth T. Small."); and that "[t]he combined negligence of John Owen Lee and Llewellyn Brown was a proximate cause of the accident and the injuries sustained by Seth T. Small" on November 13, 2009, *see* Counterclaim at ¶ 5 and Third-Party Complaint at ¶ 6. However, there are no allegations that Brown's negligence or the combined negligence of Lee and Brown was a proximate cause of *Lee's* injuries. There is also no allegation that Brown "is or may be liable to [Small] for all or part of [Lee's] claim against [Small]," *see* FED. R. CIV. P. 14(a)(1), which would have made clear that Brown's fault toward Lee was at issue, either as a matter of comparative fault or contribution.[9] *See Schwennen*, 430 N.W.2d at 103 (considering whether the plaintiff or the defendants had put at issue a third-party's fault toward the plaintiff by bringing a direct claim or a claim for contribution). It also is not immediately apparent that a claim that Brown was at fault toward Lee would be a claim with any "legal efficacy," where Small and Toft still have not articulated any basis for Brown's fault toward Lee, and even absent Brown's actions, it appears that the tractor and implement that Small had been driving would still have been stopped on the bridge and substantially over the center line, obstructing Lee's lane, when Lee's vehicle hit Small and the implement. *Cf. id.* (claims without "legal efficacy" did not require attribution of the fault of a third party toward the plaintiff).

---

[9] Indeed, while Small's claim against Brown may be a proper "third-party complaint" against Brown under Iowa law, it is not a proper "third-party complaint" under Rule 14 of the Federal Rules of Civil Procedure, because it lacks such an allegation. *See* FED. R. CIV. P. 14(a)(1).

This part of Lee's Motion In Limine will be granted, and Small and Toft will be precluded from presenting evidence of or argument about Brown's fault in causing Lee's damages.

### 4. Evidence relating to Lee's sex life

The seventh category of evidence that Lee seeks to exclude is evidence relating to his sex life, and/or his use of prescription medicine relating to his sex life. More specifically, he seeks to exclude evidence and argument about his past Cialis or similar prescriptions, or any other matters relating to his level of sexual function, or the lack thereof, either prior to or after the November 13, 2009, collision. While Brown does not resist this part of Lee's Motion In Limine, Small and Toft do. Unlike the preceding issue, this one presents a straightforward evidentiary question.

#### a. Arguments of the parties

As background to this part of his Motion, Lee explains that he is a 66-year-old now-retired Lutheran minister; that he has been divorced since 1992; and that he has two adult children. He believes that his voluminous medical file may contain a reference to a discussion that he had with his physician concerning his obtaining a prescription for Cialis. He explains that he did not pursue this further, and no prescription was obtained at any time following the November 13, 2009, collision.

Lee asserts that there is no claim in this suit for loss of consortium, nor does he claim that his injuries caused by the November 13, 2009, collision have, at any time, caused any impairment of sexual function, so that this evidence is simply not relevant. He also argues that, given his vocation, there exists a substantial risk that jurors may apply a higher, or double, standard to him concerning such intimate matters.

Small and Toft resist exclusion of this evidence to the extent that Lee is seeking damages concerning his quality of life, because sexual impairment evidence is relevant to

such damages. They also contend that the relevance of such evidence to quality-of-life damages is not outweighed by any potential prejudice.

### b.   Analysis

Small and Toft's argument that such evidence relating to Lee's sex life is relevant and admissible simply because Lee has claimed damages for loss of quality of life misses the mark. Where Lee represents that he is making no claim in this suit for loss of consortium, and no claim of impairment of sexual function as a result of the November 13, 2009, collision, evidence that he asked his physician about Cialis or a similar prescription, but did not pursue it, has so little probative value, that it is apparent that the purpose of attempting to manufacture an issue on which the evidence would be admissible is for the prejudicial purposes of attempting to embarrass Lee in front of the jury and attempting to play on any jurors' biases about how a clergy member should behave. *See* FED. R. EVID. 403 (even probative evidence may be excluded if its potential for unfair prejudice substantially outweighs is probative value). While I cannot describe this evidence as "inflammatory," on the present record, it appears that the only purpose for offering such evidence is to divert the jurors' attention from the material issues in the trial. *Compare Adams*, 401 F.3d 900. The evidence in question will be excluded.

### 5.   *Evidence of alcohol consumption and recovery programs*

The last remaining category of evidence that Lee seeks to exclude is reference to his past consumption of alcoholic beverages, which he expanded in his Supplemental Motion In Limine to include evidence of his involvement in treatment or recovery workshops or programs at Hazelden or any other recovery center. Again, Brown does not resist exclusion of this category of evidence, but Small and Toft do. Again, I find that this portion of Lee's Motion and his Supplement present plainly evidentiary questions.

40

### a.    *Arguments of the parties*

In his original Motion, Lee explains that the evidence in question is references, in his voluminous medical records, to sporadic alcohol consumption.  He argues that there is no evidence that he had consumed any alcohol in any amount during any relevant time period preceding the November 13, 2009, collision and, indeed, his blood and urine samples drawn in the hospital emergency room immediately following that collision revealed no presence of intoxicants.  He argues that his history of sporadic alcohol consumption is not probative of any issue in this case.

In his Supplement, Lee explains that Small and Toft's attorney has produced a letter from Hazelden, a recovery center in Center City, Minnesota, dated November 8, 2011, which Lee believes that Small and Toft intend to offer at trial or discuss in the presence of the jury.  Lee asserts that there is no evidence, medical or otherwise, that he has any history of drug addiction or problems with alcohol, and he reiterates that there is no evidence that he had consumed any alcohol in any amount during any relevant time period preceding the November 13, 2009, collision.  He asserts that he did attend workshops at Hazelden, for both professional and personal reasons, to address issues involving anxiety, depression, and co-dependency.  He contends that any suggestion of Hazelden, recovery workshops, or treatment centers would serve no probative purpose, but would cause irreparable prejudice to him.

Small and Toft contend that such evidence should be allowed to the extent that alcohol played an important factor in the causation of the car accident or any damages relating to Lee's quality of life.  They argue that, if, in the course of discovery, any mention of alcohol use by Lee is brought to light surrounding the circumstances of the car accident or damages relating to Lee's quality of life, then reference to Lee's past consumption of alcohol should be admissible.

### b. *Analysis*

Lee argues that there is no evidence that his alcohol consumption had anything to do with the collision on November 13, 2009, and Small and Toft do no more than suggest that *if* any mention of alcohol use by Lee is brought to light surrounding the circumstances of the car accident or damages relating to Lee's quality of life, then reference to Lee's past consumption of alcohol should be admissible. Small and Toft rely on nothing but speculation that such evidence might exist. Thus, at this point, there is not only no probative evidence that alcohol use had an impact on the accident that might require a Rule 403 balancing of that probative value against potential prejudice, but no evidence at all. Indeed, in an excerpt of Lee's deposition, attached to his Supplement, Lee denies any issues or problems with drugs or alcohol, and that denial is known to and unchallenged by Small and Toft in response to this portion of Lee's original Motion or his Supplement. Moreover, on the present record, casting references to Lee's alcohol consumption as a quality-of-life issue appears to be no more than another attempt to manufacture an issue on which such evidence would ostensibly be admissible for the prejudicial purposes of attempting to embarrass Lee in front of the jury and attempting to play on any jurors' biases about how a clergy member should behave. *See* FED. R. EVID. 403 (even probative evidence may be excluded if its potential for unfair prejudice substantially outweighs its probative value). Thus, Small and Toft will be barred from making references to Lee's past consumption of alcoholic beverages, until and unless they demonstrate, outside the presence of the jury, that his alcohol consumption has some relevance to this case.

Similarly, while it appears that the purpose of presenting evidence of Lee's involvement in treatment or recovery workshops or programs at Hazelden or any other recovery center is to suggest that he has an alcohol problem, and thus embarrass him or play on the jurors' biases about how a clergy member should behave, Small and Toft have

not contradicted Lee's representations that he did attend workshops at Hazelden, for both professional and personal reasons, to address issues involving anxiety, depression, and co-dependency, not any personal drug or substance abuse problems. On the other hand, Lee's depression and anxiety problems, if any, prior to the November 13, 2009, collision may be relevant to the question of the extent to which he suffered any depression or anxiety as a result of the collision and subsequent medical problems or the extent to which the collision and subsequent medical problems aggravated pre-existing depression and anxiety. Thus, information about Lee's involvement in treatment or recovery workshops or programs at Hazelden or any other recovery center has some probative value, but without explanation of the nature of his involvement, could carry substantial unfair prejudice. Much depends upon the context in which the information is presented.[10] *See Bennett*, 656 F.3d at 813 (observing that whether the probative value of challenged evidence is substantially outweighed by unfair prejudice "is a fact-intensive question," which must often be answered by the trial court in the course of trial). Therefore, I will deny without prejudice Lee's Supplement to his Motion In Limine concerning involvement in treatment programs at Hazelden or elsewhere.

### F. Remaining Portions Of Small And Toft's Motion In Limine

I have not yet addressed four categories of evidence that Small and Toft challenge in their Motion In Limine. I will consider those categories of evidence in turn.

---

[10]Indeed, it would seem to me that Lee could forestall much of the potential prejudice by presenting and explaining information about his involvement in such treatment programs in his case in chief.

### 1. Damages evidence not disclosed in discovery

Small and Toft assert that, pursuant to Rule 1.508 of the Iowa Rules of Civil Procedure, Lee should be limited in evidence and in arguments to the jury to items of damages and computations of damages set forth in answers to interrogatories. Brown takes no position on this issue, but Lee contends that the motion should be denied, because he has fully responded to and updated his responses to the pertinent interrogatories.

### a. Arguments of the parties

Small and Toft argue that, in their Interrogatories (5) and (6), they asked Lee for information as to the claims that he was making relating to damages in order to determine the extent of investigation and discovery, whether experts should be hired, and whether rebuttal evidence should be prepared. They now assert that they believe that Lee may claim additional damages that were not disclosed in the answers to those interrogatories. They argue that, pursuant to Iowa Rule 1.508 and *White v. Citizens National Bank of Boone*, 262 N.W.2d 812, 815-17 (Iowa 1978), Lee should be limited in evidence and argument to the damages set forth in the answers or supplements to the answers to Interrogatories (5) and (6). In response, Lee catalogues his responses and supplemental responses to the Interrogatories in question, and asserts that, under the circumstances, Small and Toft cannot claim that they were unaware that his claim for future mental pain and suffering and past and future loss of mind and body would be substantial, so that they were not prejudiced in preparing a defense to these claims.

### b. Analysis

I find that Small and Toft have mistakenly relied on an Iowa Rule of Civil Procedure, Rule 1.508, and Iowa case law as the basis for a ruling on a matter that is clearly "procedural" and, consequently, controlled by federal law, in this diversity action. *See, e.g., In re Baycol Prods. Litig.*, 616 F.3d at 785 ("'It is, of course, well-settled that

44

in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state.'" (quoting *Hiatt*, 75 F.3d at 1255, in turn citing *Erie R.R. Co.*, 304 U.S. at 58). While this portion of the motion by Small and Toft could just as easily have been based on federal discovery rules and the August 16, 2010, Scheduling Order And Discovery Plan (docket no. 15), it is not the court's responsibility to discover authority supporting a motion (or portion of a motion) on which the movant has offered no controlling authority. This portion of Small and Toft's Motion In Limine can be denied on the basis of lack of relevant authority. Furthermore, Small and Toft have not presented any reason for me to believe that they have not been fully informed of Lee's damages claims or any reason for me to believe that they will be surprised by either the nature or amount of any of Lee's damages claims, while Lee has given me reasons to believe that he has fully complied with applicable discovery rules. Until and unless Lee offers expert evidence concerning his damages that Small and Toft can show has never before been disclosed and that does, indeed, cause them surprise, this part of their Motion In Limine is premature.

## 2. *Unidentified experts*

Also pursuant to Iowa Rule 1.508, Small and Toft seek to exclude testimony from unidentified experts. Brown asserts that this part of Small and Toft's motion is inapposite to him, while Lee asserts that all experts have been properly disclosed.

### a. *Arguments of the parties*

Small and Toft assert that they submitted Interrogatories (2), (26), and (28), inquiring about experts to be called as witnesses and their expected testimony. Although they acknowledge that Lee responded to those Interrogatories, they state that they believe that Lee may intend to offer opinions of additional experts not made known to them through answers to interrogatories or pursuant to the Pretrial Order. They request that any

such additional experts be excluded for failure to designate them pursuant to the Pretrial Order, failure to disclose and supplement in response to interrogatories, and preventing Small and Toft from following the appropriate two-step process of discovery set out in *Sullivan v. Chicago & Northwestern Transp.*, 326 N.W.2d 320, 327 (Iowa 1982).

Lee's response is concise: He asserts that he is unable to determine from Small and Toft's Motion or supporting brief what expert witness or witnesses they are referring to, because all expert witnesses have been properly designated.

### b. Analysis

Again, I find that this procedural issue in this diversity action is controlled by federal law. *See, e.g., In re Baycol Prods. Litig.*, 616 F.3d at 785. The difference between this issue and the preceding one is that Small and Toft argue, at least in the alternative, that the evidence in question should be barred for failure to comply with the Pretrial Order. I find that Small and Toft's attempt to exclude unidentified experts, based on mere speculation that there may be some, is simply premature. Until and unless Lee identifies as an expert witness or offers testimony from an expert not properly disclosed, the Pretrial Order is not implicated. This part of Small and Toft's Motion will be denied as premature.

### 3. Evidence regarding dangerousness

Small and Toft also seek to preclude Lee, Brown, and any accident reconstruction experts from opining on issues of dangerousness and reasonableness surrounding the November 13, 2009, collisions. Brown resists, and Lee joins his resistance.

### a. Arguments of the parties

Small and Toft contend that opinions about dangerousness and reasonableness involve mixed questions of law and fact and, as such, are not proper subjects for expert opinions, because they are not necessary, where the jury will make appropriate

determinations on these issues, based on the court's instructions. They also argue that such opinions are prejudicial, because they cannot be overcome by effective cross-examination or proper objections, and a limiting instruction could merely emphasize the improper matters.

Brown argues that expert testimony is necessary and proper regarding dangerousness and reasonableness, because it is necessary and proper to explain the phenomenon of "glare blindness" and the dangerousness and reasonableness of the conduct of Small, given the significant amount of time that Small would have required to negotiate the long narrow bridge with his large equipment. He also contends that other witnesses should be able to testify about the amount of traffic on Highway 18 and the likelihood of encountering oncoming vehicles at inopportune times. Moreover, he contends that such testimony is necessary and proper on the issue of whether it was dangerous or reasonable to move such large equipment at night, in light of good weather forecasts for the two days after the collisions. While Brown concedes that such evidence may be in some sense "prejudicial," because it hurts Small's claim and Small and Toft's defense, it is not the sort of unfair prejudice that Rule 403 would exclude. He also argues that the Iowa case law that Small and Toft cite is inapposite. Lee joins in Brown's response.

### b.      Analysis

While I do not find the products liability decision on which Small and Toft rely, *Aller v. Rodgers Machinery Mfg. Co., Inc.*, 268 N.W.2d 830, 840 (Iowa 1978) (holding that, in a strict liability product defect case that "[t]he requirement of unreasonable danger is a legal standard upon which no witness, expert or non-expert, may express an opinion as to whether or not the person or the conduct or the product measures up to that standard"), to be instructive here, I do find a decision in an Iowa negligence case, *Peterson v. Taylor*, 316 N.W.2d 869, 874 (Iowa 1982), to be more helpful. In *Peterson*, the

plaintiff complained that no witness testified that a reasonable child of like capacity would not have acted as the plaintiff did in that case, but the court held "that such testimony need not, and indeed may not, be presented." *Peterson*, 316 N.W.2d at 874. The court explained,

> Determining how a reasonable person would have acted under the circumstances is clearly the function of the jury. The "reasonable child" inquiry differs from the "reasonable man" inquiry only in that the "circumstances" in the former case are broadened to include consideration of the child's age, intelligence and experience. In neither case should a witness, expert or otherwise, be permitted to express an opinion on what a reasonable person would have done in a similar situation, because such testimony would be tantamount to an opinion on whether the person in question was negligent. *See Grismore v. Consolidated Products*, 232 Iowa 328, 361, 5 N.W.2d 646, 663 (1942).

*Peterson*, 316 N.W.2d at 874. This decision counsels against allowing either an expert or a lay witness to testify as to the "dangerousness" or "reasonableness" of the conduct of any person involved in the collisions on November 13, 2009.

Federal law, which is the more appropriate basis for determination of this issue, does not require a different result. While Rule 704 of the Federal Rules of Evidence permits expert testimony that "embraces an ultimate issue to be decided by the trier of fact," the Eighth Circuit Court of Appeals has also recognized that "[o]pinions that are 'phrased in terms of inadequately explored legal criteria' or that 'merely tell the jury what result to reach' are not deemed helpful to the jury, Fed.R.Evid. 704 advisory committee's note, and thus, are not admissible under Rule 702." *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993); *accord Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 751 (8th Cir. 2003) (affirming the trial court's rejection of an expert's legal opinions

that "attempt[ed] to tell the court [as the trier of fact] what result to reach" (citing Rule 702 and *Whitted*, 11 F.3d at 785)).

Here, while I believe that experts and lay witnesses should be precluded from testifying that any person acted "dangerously," "reasonably," or "unreasonably," because doing so would be tantamount to telling the jury what result to reach, *see id.*, nothing convinces me that expert or lay witnesses should be precluded from testifying about circumstances and conduct from which jurors could infer "dangerousness," "reasonableness," or "unreasonableness." Specifically, expert witnesses may testify about "glare blindness," including what it is, what causes it, and what effect it has on a person, because such testimony is likely to be helpful to jurors on an unfamiliar topic, *see* FED. R. Evid. 702, and such testimony is not tantamount to an opinion that anyone was negligent, *See Peterson*, 316 N.W.2d at 874, or telling the jurors what result to reach. *Whitted*, 11 F.3d at 785; *Dow Corning Corp.*, 335 F.3d at 751. Similarly, lay and expert witnesses may testify about the amount of time that Small would have required to negotiate the long narrow bridge with his large equipment; the amount of traffic on Highway 18 at the time of day and season in question—and, particularly, on the night of November 13, 2009; the likelihood of encountering oncoming vehicles at inopportune times; and the necessity of Small moving large equipment on a highway at night, in light of good weather forecasts for the two days after the collisions. While such testimony may allow jurors to draw inferences about the dangerousness, reasonableness, or unreasonableness of the conduct of Brown, Lee, or Small, they are not opinions that anyone acted dangerously, reasonably, or unreasonably.

While experts and lay witnesses may not testify as to a conclusion that any person acted "dangerously," "reasonably," or "unreasonably"—and I will grant this part of Small and Toft's Motion to that extent—experts and lay witnesses may testify as to the existence

or non-existence of circumstances that would allow jurors to determine whether or not any person did act "dangerously," "reasonably," or "unreasonably."

### 4.    *Evidence of traffic tickets*

Finally, Small and Toft seek to exclude evidence of traffic tickets Small received as a result of the November 13, 2009, collisions or any other accidents. Brown resists this part of Small and Toft's Motion, and Lee joins in Brown's resistance.

### a.    *Arguments of the parties*

Small and Toft argue that evidence of traffic tickets that Small has received are not relevant or admissible pursuant to Rules 401 and 402 of the Federal Rules of Evidence, because such evidence would not have any tendency to prove the existence of fault in connection with the collisions involved in these proceedings. They argue that the fact that a ticket was merely issued is not admissible, nor are any other portions of the court records relating to traffic charges, nor is a conviction. They assert that a guilty plea to a traffic ticket is admissible only because it constitutes an admission, but the guilty plea is subject to being explained. They also argue that evidence of similar wrongful acts is not admissible to show propensity or conformity.

Brown responds that Small has made evidentiary admissions at the trial of his traffic ticket and in commenting upon the trial judge's findings of fact in that trial. He also argues that such admissions are relevant to the issue of Small's fault. Somewhat more specifically, Brown argues that the judge trying the traffic violations found that Small was "speculating, guessing, and hoping" that he would not meet another vehicle on the bridge, and Small has admitted his agreement with these and other findings in his deposition. Brown concedes that Small may attempt to explain his admissions, but the evidence regarding the traffic ticket should not just be completely excluded. Brown also contends

that Small and Toft can request an appropriate limiting instruction, if they believe one is necessary.

### b.   *Analysis*[11]

Small and Toft overstate the extent to which IOWA CODE §§ 321.489 and 321.490 bar evidence of his traffic tickets. Neither provision provides that "[c]onvictions on traffic charges are not admissible," as they contend. *See* Defendants' Brief In Support Of Motion In Limine (docket no. 32-1), 8. Rather, § 321.489 provides that "[n]o *record of conviction* of any person for any violation of this chapter shall be admissible as evidence in any court in any civil action." IOWA CODE § 321.489 (emphasis added). Section 321.490 provides that "[t]he conviction of a person upon a charge of violating any provision of this chapter or other traffic regulation less than a felony shall not affect or impair the credibility of such person as a witness in any civil or criminal proceeding." IOWA CODE § 321.490. While § 321.489 precludes admissibility of the "record of conviction" and § 321.490 bars use of a conviction of a traffic violation that is less than a felony to impeach the credibility of the recipient as a witness, neither would bar admissibility of the *fact* of a conviction of a traffic violation on the issue of negligence.

Small and Toft contend that the "leading case" on the issue of the admissibility of traffic charges is *Book v. Datema*, 256 Iowa 1330, 131 N.W.2d 470 (Iowa 1965), in which the Iowa Supreme Court stated the following:

> I.   The general rule is that the record of a conviction or acquittal in a criminal prosecution is not admissible in evidence in a civil action to establish the truth of the facts on which it was rendered. Annos. 31 A.L.R. 261, 18 A.L.R.2d 1287; *In re Johnston's Estate*, 220 Iowa 328, 335, 261 N.W.

---

[11]The use that can be made of convictions of traffic violations in negligence actions is not merely a procedural issue, but one involving Iowa substantive law.

908, 911, 262 N.W. 488, and citations; *Bates v. Carter*, 225
Iowa 893, 894, 895, 281 N.W. 727, 728, and citations.

II.      However, an exception to this rule is that the
record in a criminal case showing a plea of guilty is admissible
in a subsequent civil action against the accused arising out of
the same offense, as his deliberate declaration or admission
against interest. 20 Am.Jur., Evidence, section 648; Annos.
31 A.L.R. 261, 18 A.L.R.2d 1287; *Root v. Sturdivant*, 70
Iowa 55, 29 N.W. 802; *Hauser v. Griffith*, 102 Iowa 215, 71
N.W. 223; *Boyle v. Bornholtz*, 224 Iowa 90, 275 N.W. 479.

In *Crawford v. Bergen*, 91 Iowa 675, 60 N.W. 205;
*Jones v. Cooper*, 97 Iowa 735, 65 N.W. 1000, and *Swan v.
Philleo*, 194 Iowa 790, 190 N.W. 406, we point out the
evidence of a plea of guilty is admissible but not conclusive
proof in the civil action.

*Book*, 256 Iowa at 1332-33, 131 N.W.2d at 471. However, Small and Toft overlook the

fact that *Book* rejected the argument that § 321.489 bars the use of any record *or evidence*

of a plea of guilty as declarations or admissions against interest. *Id.* at 1334, 131 N.W.2d

at 472. The court concluded that the statute did not preclude evidence of an oral plea of

guilty or a finding of guilt after trial. *Id.* at 1337, 131 N.W.2d at 473. Consequently, the

court held "defendant's voluntary plea of guilty was an admission which should have been

received as substantive proof of negligence and also for impeachment." *Id.* at 1337, 131

N.W.2d at 474. The court also held that § 321.490 "[i]n no way changes the applicable

law as to admissibility of declarations or admissions against interest or impeachment by

showing prior inconsistent statements." *Id.*

Small and Toft also overlook the fact that the Iowa Supreme Court subsequently

overruled the portion of *Book* holding that a guilty plea admitted in a subsequent civil

action arising out of the same event was not to be given preclusive effect and could be

explained through the introduction of other evidence. *See Ideal Mut. Ins. Co. v. Winker*,

319 N.W.2d 289, 291 (Iowa 1982) (citing *Book*, 256 Iowa at 1333, 131 N.W.2d at 471). In *Ideal*, the Iowa Supreme Court held "that a guilty plea, in a proceeding in which a court ascertains that a factual basis exists for the plea and accepts the plea, satisfies the second requirement of our general principle of issue preclusion," *i.e.*, that "the issue must have been raised and litigated in the prior action," where the court had previously held that all other issues of issue preclusion were otherwise met by such a guilty plea. *Id.* at 296. The court noted, however, that "[t]he rule in *Book* . . . will continue to govern cases in which the guilty plea was not entered in accordance with rule 8(2)(b) of the rules of criminal procedure or the previous . . . requirements [of *State v. Sisco*, 169 N.W.2d 542 (Iowa 1969), and *Brainard v. State*, 222 N.W.2d 711 (Iowa 1974)]." *Id.* Because Small did not plead guilty to the traffic violations, but was found guilty of them, it is not clear that *Book* applies at all.

Subsequently, in a case not cited by any of the parties, the Iowa Supreme Court noted, "The rule is well established in Iowa that a validly entered and accepted *guilty plea* precludes a criminal defendant from relitigating essential elements of the criminal offense in a later civil case arising out of the same transaction or incident." *Dettmann v. Kruckenberg*, 613 N.W.2d 238, 244 (Iowa 2000) (emphasis added) (citing *Teggatz v. Ringleb*, 610 N.W.2d 527, 529 (Iowa 2000); *AID Ins. Co. (Mut.) v. Chrest*, 336 N.W.2d 437, 439 (Iowa 1983); and *Ideal*, 319 N.W.2d at 296). The court then addressed the question of "whether a criminal case *conviction* is preclusive as to issues raised in a subsequent civil action against the criminal defendant." *Id.* at 245 (emphasis added). After considering authorities on this question, the Iowa Supreme Court held that "in appropriate cases a criminal case *conviction* may be preclusive in a later civil suit as to those issues that were previously litigated in the criminal proceeding." *Id.* at 248

(emphasis added). "Appropriate cases" are ones in which the requirements of issue preclusion have been satisfied. *Id.*

The requirements of issue preclusion, as set out in *Dettmann*, are the following: "'(1) the issue determined in the prior action is identical to the present issue; (2) the issue was raised and litigated in the prior action; (3) the issue was material and relevant to the disposition in the prior action; and (4) the determination made of the issue in the prior action was necessary and essential to that resulting judgment.'" *Id.* at 244 (quoting *American Family Mut. Ins. Co. v. Allied Mut. Ins. Co.*, 562 N.W.2d 159, 163-64 (Iowa 1997)) The court also explained,

> In addition to these four requirements, "either (1) the parties in both actions must be the same (mutuality of parties), or (2) there must be privity between the party against whom issue preclusion is invoked and the party against whom the issue was decided in the first litigation." *Brown*, 558 N.W.2d at 163. A "privy" means "one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Id.* (quoting *Goolsby v. Derby*, 189 N.W.2d 909, 914 (Iowa 1971)).
>
> Issue preclusion may be used offensively as a sword by a new plaintiff against a defendant who was a party to the former litigation. *See Harris v. Jones*, 471 N.W.2d 818, 820 (Iowa 1991). Defensive use of issue preclusion occurs when a stranger to the judgment in the former action, ordinarily the defendant in the second action, relies upon the prior judgment as conclusively establishing in that party's favor, an issue which the party must prove as an element of the defense. *Brown*, 558 N.W.2d at 164. Neither mutuality of parties nor privity is required where issue preclusion is applied defensively if the party against whom issue preclusion is invoked was

> so connected in interest with one of the parties in the
> former action as to have had a full and fair opportunity
> to litigate the relevant claim or issue and be properly
> bound by its resolution.
>
> *Id.* at 163-64 (quoting *Opheim v. American Interinsurance
> Exch.*, 430 N.W.2d 118, 120 (Iowa 1988)).

*Dettmann*, 613 N.W.2d at 244.

While it is clear that Small's convictions (or guilty pleas) to traffic violations will be admissible to some extent, it is not clear to what extent, *i.e.*, on precisely what issues, because the parties have not addressed the *Dettmann* requirements. On the other hand, it is clear that, irrespective of whether Small was found guilty of or pleaded guilty to traffic violations, his *admissions* about the circumstances of the accident in the trial of those traffic violations and in his subsequent deposition in this civil case are admissible. *See* FED. R. EVID. 801(d)(2).

Therefore, I will reserve ruling, in part, as to this part of Small and Toft's Motion In Limine, to the extent that it relates to evidence of the convictions themselves, but I conclude that nothing precludes evidence of Small's admissions about the circumstances of the accident in the trial of those traffic violations and in his subsequent deposition in this civil case.

### G. Brown's Motion In Limine

In his Motion In Limine, Brown seeks to exclude two categories of evidence, which Small and Toft resist in whole or in part. I will consider those categories of evidence in turn.

### 1.     Toft's factual assertions beyond personal knowledge

Brown asserts, first, that in his deposition, Toft made various factual assertions which should be precluded at trial, because they are beyond Toft's personal knowledge. Those statements include speculation about the position of the tractor and plow after the accident and what he thinks occurred at the scene of the accident. Small and Toft dispute exclusion of this evidence.

### a.     Arguments of the parties

Brown contends that Toft's speculations about what happened, when he only visited the accident scene long after all the vehicles were removed, should be precluded by Rule 602 of the Federal Rules of Evidence, because they are not based on personal knowledge. Brown also asserts that Toft's speculations are not only not supported by any other evidence in the case, but are contradicted by Small's deposition testimony.

Small and Toft counter that Toft does have sufficient personal knowledge of *the tractor* and *the specifications of the tractor* to testify concerning the locations of the vehicles consistent with the requirements of Rule 602. Moreover, they argue that Toft should be allowed to testify about the position of the vehicles pursuant to Rule 701 of the Federal Rules of Evidence, as his testimony would be proper lay testimony. They concede that the jury is entitled to give whatever weight and credibility to Toft's testimony they find is appropriate after he has given his opinion.

### b.     Analysis

Although it is with some reservations, I believe that Small and Toft may be able to show that Toft has sufficient personal knowledge of the tractor and the way it or the towed implement behaved when the tractor was pulling the implement to offer an opinion about the position of the tractor and implement at the time of and after the collisions, including whether or not they slid over some distance. *See* FED. R. EVID. 602 (although "[a] witness

56

may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter," the rule also provides that "[e]vidence to prove personal knowledge may, but need not, consist of the witness' own testimony"). I also conclude that such testimony may be "rationally based on the perception of the witness," may be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue," and is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 702. This is not to say that Brown (or Lee) may not interpose an appropriate objection to such testimony, when presented, if they believe that a proper basis for the opinions has not been established.

This part of Brown's Motion will be denied without prejudice to appropriate challenges to Toft's opinions at trial.

### 2. Evidence of Small's status as an EMT and Army Reservist

Finally, Brown seeks to exclude Small's Exhibit 406, which consists of news articles from the Spencer Daily, accompanied by blogs from readers. Within these articles and blogs are references to Small's status as an Emergency Medical Technician (EMT) and his membership in the Army Reserve. Small and Toft object only "to the extent that [Brown argues that] mention of Small's status as either an Emergency Medical Technician or a member of the Army Reserve would never be admissible." They make no attempt to show that the entirety or any particular part of Exhibit 406 would be admissible. Because their resistance is limited, I will only address the disputed portion of the evidence in question.

### a. Arguments of the parties

Brown contends that Small will attempt to unfairly glamorize himself before the jury by referring to his status as an EMT and member of the Army Reserve. Brown argues that the comments in which these references are found are rank hearsay and unfairly prejudicial to Brown, by improperly focusing on Small's status, instead of on his conduct at the time of the collisions.

Small and Toft argue that Small's level of education and experience is important to determine some of the key underlying fault aspects in the case, although they do not explain precisely how. They also argue that there is little chance that Brown would be unfairly prejudiced by the inclusion of such evidence.

### b. Analysis

As a general principle, Small's level of education and experience may be probative of the reasonableness of his conduct at the time of the collisions, including his decision to leave the tractor, ostensibly to try to assist Brown after the first collision, because Small was an EMT. Passing references to Small's EMT training or membership in the Army Reserve, however, are far from sufficiently prejudicial to outweigh that probative value. What would not be permissible would be attempts to dwell upon Small's EMT training and contributions as an Army Reservist to the extent that such matters become a distraction from matters properly at issue in the case, specifically, Small's conduct at the time of the events on November 13, 2009. Small and Toft make no representation that they will or argument that they should be allowed to offer the potentially prejudicial comments about Small's EMT status and Army Reservist status in the news reports and blogs in Exhibit 406, nor any other argument for admission of that exhibit, in whole or in part.

Under the circumstances, I will grant Brown's request to exclude Exhibit 406, in its entirety, as irrelevant and prejudicial, but I will allow limited evidence of Small's status as an EMT and Army Reservist.

### III. CONCLUSION

Upon the foregoing, the parties' pretrial evidentiary motions are resolved as follows:

1.    Lee's October 31, 2011, Motion In Limine (docket no. 31) is **granted in part and denied in part**, as follows:

a.    That part of his motion seeking to exclude evidence concerning the fault of any of his medical providers is **denied as premature**;

b.    That part of his motion seeking to exclude evidence of correspondence from Medicare, the Medicare Secondary Payer Recovery Contractor (MSPRC), or the Center for Medicare Services (CMS) is **granted**, and Small and Toft will be precluded from presenting evidence of correspondence from Medicare, the Medicare Secondary Payer Recovery Contractor (MSPRC), or the Center for Medicare Services (CMS), except to the extent that the evidence shows amounts actually paid by Medicare (not merely what Medicare estimates that it has paid) for Lee's injuries (and only to the extent that the identity of the Medicare entities is redacted);

c.    That part of his motion seeking to exclude evidence and discussion of his eligibility for Medicare benefits, the fact that Medicare has made payment for the medical care that he has received to date, the fact that Medicare may make payment for care that he may require in the future, or evidence that a collateral

source (Medicare) has paid any lesser sums or portions of the medical expenses that he has incurred as a result of the collision on November 13, 2009, is

        i.    **granted** to the extent that Lee may recover more than the amount actually paid by his insurance or Medicare, if supported by proper evidence of "reasonableness," but evidence of the amount actually paid will not be excluded; and

        ii.    **granted** to the extent that the amount of medical expenses actually paid by collateral sources may be identified only as payments by "insurers," with more specific identifying information redacted;

    d.    That part of his motion seeking to exclude evidence of Brown's fault in causing his damages is **granted**;

    e.    That part of his motion seeking to exclude evidence of any settlements of, or any offers to settle or compromise, any of the claims made by any of the parties in this suit is **granted**;

    f.    That part of his motion seeking to exclude evidence of his lack of automobile insurance at the time of the collision is **granted**;

    g.    That part of his motion seeking to exclude evidence relating to his sex life, and/or his use of prescription medicine relating to his sex life is **granted**;

    h.    That part of his motion seeking to exclude reference to his past consumption of alcoholic beverages, as expanded in his Supplemental Motion In Limine (docket no. 39) to include evidence of his involvement in treatment or recovery workshops or programs at Hazelden or any other recovery center is

        i.    **granted to the extent that** Small and Toft will be barred from making references to Lee's past consumption of alcoholic beverages, until

and unless they demonstrate, outside the presence of the jury, that his alcohol consumption has some relevance to this case; but

ii.    **denied without prejudice** as to Lee's involvement in treatment programs at Hazelden or elsewhere; and

i.    That part of his motion seeking to bar cross-examination or argument by Small's counsel on Small's third-party claim against Brown on any matters concerning Lee's damages is **granted**.

2.    Small and Toft's November 2, 2011, joint Motion In Limine (docket no. 32) is **granted in part and denied in part**, as follows:

a.    That part of their motion seeking to exclude evidence concerning their having or lacking liability insurance is **granted**;

b.    That part of their motion seeking a ruling that Lee should be limited in evidence and in arguments to the jury to items of damages and computations of damages set forth in answers to interrogatories is **denied as premature**;

c.    That part of their motion seeking to preclude Lee, Brown, and any accident reconstruction experts from opining on issues of dangerousness and reasonableness surrounding the November 13, 2009, collisions is **granted to the extent that** experts and lay witnesses may not testify as to a conclusion that any person acted "dangerously," "reasonably," or "unreasonably," but experts and lay witnesses may testify as to the existence or non-existence of circumstances that would allow jurors to determine whether or not any person did act "dangerously," "reasonably," or "unreasonably";

d.    That part of their motion seeking to exclude testimony from unidentified experts is **denied as premature**;

e.	**Ruling is reserved** on that part of their motion seeking to exclude evidence of traffic tickets Small received as a result of the November 13, 2009, collisions or any other accidents, to the extent that it relates to evidence of the convictions themselves, but nothing precludes evidence of Small's admissions about the circumstances of the accident in the trial of those traffic violations and in his subsequent deposition in this civil case; and

f.	That part of their motion seeking to limit Lee's recovery to the amount of medical bills actually paid (including payments by Medicare) or the net amount due and owing is **denied**.

3.	Brown's November 2, 2011, Motion In Limine (docket no. 33) is **granted in part and denied in part**, as follows:

a.	That part of his motion seeking to exclude as beyond Toft's personal knowledge Toft's factual assertions about the position of the tractor and plow after the accident and what he thinks occurred at the scene of the accident is **denied without prejudice** to appropriate challenges to Toft's opinions at trial; and

b.	That part of his motion seeking to exclude Small's Exhibit 406 and references to Small's status as an Emergency Medical Technician (EMT) and Army Reserve is **granted** with respect to Exhibit 406, which is excluded in its entirety, but **denied** as to other limited evidence of Small's status as an EMT and Army Reservist.

**IT IS SO ORDERED.**

**DATED** this 22nd day of November, 2011.

_Mark W. Bennett_
_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA